### UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

#### MOTION INFORMATION STATEMENT

Docket Number(s): **20-2980**                     Caption [use short title]

Motion for: **Bail pending appeal**                **United States v. Steven Crea**

Set forth below precise, complete statement of relief sought:

**For the reasons set forth in the accompanying affirmation of Brendan White, Esq., Appellant Steve Crea, who has terminal stage IV cancer, seeks an order granting bail pending determination of the above-captioned appeal.**

MOVING PARTY: **Steven Crea**           OPPOSING PARTY: **The United States of America**

- [ ] Plaintiff    [ ] Defendant
- [x] Appellant/Petitioner    [ ] Appellee/Respondent

MOVING ATTORNEY: **Brendan White**      OPPOSING ATTORNEY: **Hagan Scotten, AUSA (SDNY)**

[name of attorney, with firm, address, phone number and e-mail]

**524 East 20th Street, New York, NY  10009**     **One St. Andrews Plaza, New York, NY 10007**

**646-303-0267**                                  **212-637-220**

**hendonbgb@gmail.com**                           **Hagan.Scotten@usdoj.gov**

Court- Judge/ Agency appealed from: **Hon. Cathy Seibel, U.S.D.J. (SDNY)**

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[x] Yes   [ ] No (explain): _____

Opposing counsel's position on motion:
[ ] Unopposed  [x] Opposed  [ ] Don't Know
Does opposing counsel intend to file a response:
[x] Yes   [ ] No   [ ] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below? [ ] Yes [x] No
Has this relief been previously sought in this court? [ ] Yes [ ] No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested? [ ] Yes [x] No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? [x] Yes [ ] No If yes, enter date: **May 8, 2024**

Signature of Moving Attorney:
_____ Date: **3/28/24**     Service : [x] Electronic  [ ] Other [Attach proof of service]

Form T-1080 (rev. 10-23)

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
_____

UNITED STATES OF AMERICA      Dkt. No. 20-2980

     V.                    AFFIRMATION OF
                            BRENDAN WHITE, ESQ.
                            AND MEMORANDUM OF LAW
STEVEN CREA,              IN SUPPORT OF MOTION
                            FOR BAIL PENDING APPEAL
        Defendant-Appellant.

_____

    BRENDAN WHITE, an attorney duly admitted to practice in this Court, hereby affirms the following under penalty of perjury:

    1. I represent defendant-appellant Steven Crea in the above-captioned appeal, together with co-counsel Anthony DiPietro. This Affirmation is submitted in support of Mr. Crea's motion for bail pending the determination of his appeal of his conviction, pursuant to 18 U.S.C. §§ 3141(b), 3143(b), 3145(c). Mr. Crea, who has been in Bureau of Prisons custody since his arrest in 2017, is 76 years old and during the pendency of this appeal has been diagnosed with terminal Stage IV lung cancer and several other serious medical conditions, with a life expectancy at this point of less than a year, thus presenting unfortunately exceptional circumstances under which detention is inappropriate. Additionally, he poses no risk of flight or danger to the community, and raises numerous substantial issues on appeal—which has been fully briefed and is scheduled for oral

1

argument on May 8, 2024—that are likely to lead to reversal or a new trial. He therefore asks that reasonable bail be set, subject to home confinement or any other necessary conditions, pending determination of the appeal so that he may receive needed medical care in what are likely to be his final months.

2. Mr. Crea's appeal relates to the August 6, 2020, judgment of conviction in the United States District Court for the Southern District of New York (Cathy Seibel, U.S.D.J.), following a jury verdict convicting him of one count each of racketeering conspiracy in violation of Title 18, United States Code, Section 1962(d); VICAR murder conspiracy in violation of Title 18, United States Code, Section 1959(a)(1); VICAR murder in violation of Title 18, United States Code, Section 1959(a)(5); and use of a firearm resulting in death in violation of Title 18, United States Code, Section 924(j)(1), and sentencing him to a term of life imprisonment. The appeal of the judgment of conviction has also been consolidated with Mr. Crea's appeal, with his co-defendants/appellants, Christopher Londonio, Terrance Caldwell, and Matthew Madonna, of the district court's June 13, 2022, Order denying their joint Rule 33 motion for a new trial.

3. The charges related to activities alleged to have been committed in connection with the Lucchese Family from the years 2000 to 2017. The most serious charge against him, that he was

culpable for the 2013 murder of an individual named Michael Meldish, despite no animus or personal connection to Meldish, was premised mostly on the theory that, as part of the chain of command, Mr. Crea would necessarily have been involved in the decision as the alleged "underboss" of the enterprise.

4. Pursuant to an indictment filed on or about May 24, 2017, Mr. Crea was arrested without incident on May 31, 2017, and was detained at the time. Following a July 21, 2017, bail hearing, the district court continued the detention order.

5. Following extensive pretrial litigation and a six-week trial, Mr. Crea was sentenced on August 6, 2020, to a mandatory term of life imprisonment. Judgment was entered September 1, 2020, and a notice of appeal was timely filed on September 2, 2020. By Order of October 6, 2021, this court ordered that the appeal be held in abeyance pending the determination of the Appellants' joint motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. After the district court denied the motion, an amended notice of appeal was filed on June 17, 2022, and jurisdiction was returned to this Court.

6. Mr. Crea's brief was filed in this Court on March 14, 2023, the Appellants' joint supplemental brief was filed on March 6, 2023, the Government's main brief and supplemental brief were filed on August 11, 2023, and Mr. Crea's reply brief was filed on November 1, 2023. By Notification of March 18,

3

2024, the Court advised the parties that the date for oral argument has been set for Wednesday, May 8, 2024.

7. For the reasons discussed below, the appeal raises several substantial issues that would result in the judgment being vacated and a new trial or dismissal of the indictment ordered, and Mr. Crea poses absolutely no risk of flight or danger to the community, and the exceptional circumstances here dictate that having him remain in custody would be inappropriate. He should thus be granted reasonable bail during the pendency of his appeal.

Reasons Why Bail Should Be Granted

8. Bail pending appeal must granted if (i) the defendant can show by clear and convincing evidence that he is not likely to flee or pose a danger to others, and (ii) the appeal raises a substantial question that is likely to result in a reversal, new trial, or a sentence that will be less than the total time already served prior to and during the pendency of the appeal, and is not being brought simply for purposes of delay. 18 U.S.C. § 3143(b)(1).

9. Where a defendant has been convicted of a crime for which the maximum sentence is a term of life imprisonment, detention is mandatory pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3143(b)(2), unless the defendant can show that there are exceptional reasons why detention would be inappropriate.

4

United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991) (citing 18 U.S.C. § 3145(c), and affirming release on bail pending appeal based on exceptional conditions).

10. Although 18 U.S.C. § 3145(c) does not define statutory reasons, this Court has recognized that broad discretion should be afforded in determining whether a case presents exceptional circumstances, and that the determination should be made on a case-by-case basis. Id. at 497-98; see also United States v. McKenzie, 450 F.Supp.3d 449, 451-52 (S.D.N.Y. 2020) (defendant with compromised health issues released because of increased vulnerability to COVID-19, and citing DiSomma); United States v. DiMattina, 885 F.Supp.2d 572, 589 (E.D.N.Y. 2012) (citing DiSomma, cataloguing cases, and noting "whether prison would impose unusual hardships on a defendant due to illness or injury" and "whether the defendant is exceptionally unlikely to flee or to constitute a danger to the community" as examples of circumstances that had been found to be exceptional, and granting release on bail). The DiMattina court noted that 18 U.S.C. § 3145(c) authorizes appellate courts to determine whether exceptional circumstances exist, although DiSomma had also made clear that district courts could make that determination. 885 F.Supp.2d at 585.

11. An appeals issue is "substantial," if it is "one of more substance than would be necessary to a finding that it was

5

not frivolous," or "a 'close' question or one that very well could be decided the other way," or one that is "novel, which has not been decided by controlling precedent." United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985). A defendant seeking bail pending appeal is not required to prove that he is likely to succeed, only that if the appeal does succeed, it would likely result in reversal. Id. at 124-25.

A.  The Defendant Poses No Risk of Flight and Otherwise Presents Exceptional Circumstances.

12.  The circumstances overwhelmingly show that Mr. Crea, a lifelong resident of the New York City area, who has been married to his wife Diane for 57 years, and raised four children together with 14 grandchildren, and is now 76 years old, poses no risk of flight or danger to the community. Regrettably, after Mr. Crea collapsed in his cell at USP Canaan in September, 2023, he was diagnosed with Stage Four lung cancer, an incurable terminal disease with an end-of-life trajectory, with a life expectancy of eighteen (18) months or less, and with necessary administration of immunotherapy and radiation treatment in order to manage the effects of his illness to the extent possible. (See BOP Clinical Encounter Report, 3/7/24)[1]  As a result Mr.

---

[1]  In light of the sensitive nature of the medical information regarding Mr. Crea, the relevant medical documents are being furnished to the Court and to the Government under separate cover.

Crea was transferred in February, 2024, to FMC Butner North
Carolina, a designated Federal Medical Facility.

13. Unfortunately, in the time since Mr. Crea's terminal
diagnosis in September 2023, his condition has worsened to the
point at which the prospect of receiving end-of-life treatment
in confinement would be inhumane. As of this date, Mr. Crea has
already been rushed to the local hospital on at least three
occasions due to his worsening medical condition. On at least
one occasion, emergency medical care was needed to resuscitate
Mr. Crea. (See Clinical Progress Note 11/6/2023 (documenting
that Mr. Crea "was originally sent to the hospital after he was
found on the floor in his jail cell. He was found to have atrial
fibrillation and RVR. Patient was resuscitated and admitted to
the ICU")). Notably, on the other two occasions, outside medical
attention was sought by Mr. Crea when he was suffering from pain
and in need of immediate care.

14. Additionally, although Mr. Crea's medical plan
prescribes that he be treated with Zometa to help manage cancer
that spreads to a patient's bones, Mr. Crea has dental implants
which creates complications for him to be administered Zometa or
other bisphosphonates. Unfortunately, FMC Butner does not have
the appropriate tools to remove dental implants, and granting
release on bail would allow Mr. Crea to visit an outside
specialist who could perform the necessary dental work, thus

allowing him to be treated with this crucial medication. (See BOP Clinical Encounter Report, 3/11/2024)

15. The circumstances here allow that there are conditions or a combination of conditions that would ensure that Mr. Crea would not flee should he lose his appeal. If released, Mr. Crea would remain at his family home, under the care of his wife, Diane Crea, and grown children, all of whom are ready, willing, and able to care for him upon his release, as well as make arrangements for whatever professional care is needed. Although basic humanity dictates that Mr. Crea be allowed to receive the necessary care at home with respect to these dire medical conditions, or if necessary at a private hospital, for the purposes of this motion, the unfortunate circumstances make eminently clear that Mr. Crea presents zero risk of flight if he were to be released on bail.

16. We are aware, of course, of the nature of Mr. Crea's conviction and the allegations regarding his role in the enterprise between the years 2000 to 2017, which allegations he vigorously contested at trial and continues to challenge on appeal. In any event, nothing in the evidence introduced at trial, the Presentence Investigation Report, or anywhere else suggests that Mr. Crea's release would present a current threat to the community's safety in 2024, particularly in light of his medical condition. Indeed, there has been no suggestion that

that Mr. Crea has engaged in criminal activity of any kind in the seven years he has been in custody in connection with this case, and his medical circumstances foreclose any possibility that he would engage in any conduct that would violate any conditions of bail.

17.    Notably, co-defendant Joseph Datello, who was convicted of the grave offense of attempting to murder an informant, was granted compassionate release in 2023, after he was diagnosed with a debilitated medical condition.    United States v. Joseph Datello, SDNY Dkt. No. 17-cr-00089 (CS), Doc. No. 1275 ("Here, although those factors fully support the substantial sentence originally imposed, in the current context of Mr. Datello's debilitated medical condition, the Bureau of Prisons believes compassionate release is appropriate at this time").    Although Mr. Crea seeks bail, rather than compassionate release, the same rationale regarding the seriousness of the offense of conviction and potential for danger, versus the seriousness of the defendant's debilitated medical condition, applies with equal force here.    The courts and the Government have correctly recognized that defendants with terminal and debilitating medical issues, however serious their offenses of conviction, pose at most a negligible risk of danger to the community, for bail purposes or any other purpose.    In any event, Mr. Crea would consent to home confinement with the sole

9

exception that he be permitted to go to necessary medical appointments.

18.    Finally, although the life sentence Mr. Crea is serving is obviously an extremely serious one, it is inconceivable that, should he lose his appeal, he would sacrifice his remaining time with his wife, children, and grandchildren to live as a fugitive, even if it were possible to do so, which his dire medical circumstances dictate is not possible.

B.  Defendant's Appeal Raises Multiple Substantial
Issues That Would Require Reversal If Successful.

19.    With respect to the second prong, at the outset, Mr. Crea's brief raises several issues that would result in a new trial if the Court agrees, many of which were heavily litigated in the district court, and several of which involved the district court having changed its mind or otherwise acknowledged presented significant questions. Thus, on their faces, those issues presenting a "substantial" questions for this Court. United States v. Randell, 761 F.2d at 125.

20.    Perhaps most notably, the district court committed reversible error, first by reversing its pretrial ruling and allowing into evidence Londonio's unreliable "jailhouse confession" to an informant, in which Crea was implicated, and second, in depriving Crea of his rights to a fair trial, to

present a defense, and to compulsory process after he sought to introduce Londonio's live testimony, when Londonio furnished an affidavit denying the informant's account and stating his willingness to testify on Crea's behalf.

21.   This Point, discussed in detail at pages 24-40 of Mr. Crea's main brief, and pages 8-20 of his reply brief, addresses a multifaceted hearsay/penal interest issue combined with the denial of Crea's constitutional rights to present a defense and to present witnesses in his favor, arising from the district court's mid-trial decision to admit the previously precluded "jailhouse confession" of co-defendant Londonio, which implicated Crea.   Moreover, when Londonio submitted an affidavit denying having made the statement attributed to him, the district court denied a severance that would have allowed him to testify to that effect.

22.   The central event with respect to this issue was the district court's erroneous midtrial reversal of its pretrial decision denying the government's request to elicit aspects of Londonio's supposed jailhouse confession to informant David Evangelista, in which Londonio supposedly implicated Crea in the murder of Michael Meldish.   Specifically, thirty-nine days after rendering its pretrial rulings and well into trial—the district court granted an untimely prosecution request to reconsider its pretrial "denial of the government's earlier motion to admit a

11

statement that Mr. Evangelista is going to testify Mr. Londonio made to the effect of I can't believe the father and son, meaning Crea Sr. and Jr., got bail when they're the ones who gave me the order to kill Meldish." (A-1157; Tr-2406). Not only did this unfairly prejudice Mr. Crea, whose attorney had relied on the pretrial ruling in structuring the theory of defense and promising in opening statements that there would not be direct testimonial evidence against Crea regarding the Meldish murder, but the midtrial reversal by the district court was legally incorrect at every juncture.

23. At the outset, the statement attributed to Londonio by Evangelista was inadmissible hearsay as to Crea, and was not saved by the penal interest exception to the hearsay rule under Federal Rule of Evidence 804(b)(3), (1), since the declarant, Londonio, was not unavailable to testify, and had in fact submitted a representation through his attorney that he was willing to testify as a witness for Crea that he had ever made the statements attributed to him by Evangelista, and in any event the prosecution had never even proffered that Londonio was unavailable; 2) the statement attributed to Londonio, when viewed in context, was not truly self-inculpatory, but rather sought to shift blame; and 3) was not supported by corroborating circumstances that clearly indicate its trustworthiness. See Fed. R. Evid. 804; United States v. Lang, 589 F.2d 92, 95 (2d

Cir. 1978); see also Williamson v. United States, 512 U.S. 594, 601 (1994) ("The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else").

24. In fact the overall circumstances undermined the trustworthiness, since Evangelista changed his account after being confronted with evidence that the making of the statement could not have occurred as he initially claimed, and even the district court itself stated that "I'm not convinced, however, that there are sufficient corroborating circumstances clearly indicating the truth of the statement." (A-843-44; 9/13/19 Tr-22-23); see United States v. Salvador, 820 F.2d 558, 561 (2d Cir. 1987) ("the inference of trustworthiness from the proffered corroborating circumstances must be strong, not merely allowable").

25. Not only did the district court err in reversing itself mid-trial, with no basis, and deciding to allow Evangelista's testimony about the purported Londonio statement against penal interest, it compounded that error in denying Crea's motion for a severance so he could present Londonio's testimony as a defense witness to refute all aspects of Evangelista's account, violating Crea's constitutional rights to present a defense, to compulsory process, and to a fair trial.

13

Scrimo v. Lee, 935 F.3d 103, 112 (2d Cir. 2019) (quoting
Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). As
discussed in Crea's main brief and reply brief, both Londonio
and his attorney had submitted written statements that Londonio
would be willing to testify if called as a witness by Crea.
(Crea Brf. 34-40) And any questions regarding the timing of the
defense request for a severance fall squarely at the feet of the
Government, which sought the mid-trial reversal of the pretrial
ruling that necessitated the request for a severance, and the
district court, which granted that untimely request.

26. Finally, for many reasons, the error was not harmless,
and in fact pertained to the central component of the
prosecution case against Crea. Most fundamentally, the case
against Crea was weak. Crea himself was never shown to have any
personal motive to want to have Meldish killed, and the
Government acknowledged in its brief that the only other
evidence purporting to tie Crea to that homicide boils down to
cooperating witness Spinelli's interpretation of a recorded
statement by Datello that "they" had ordered it referred to
Madonna and Crea, and the testimony that Crea was the underboss,
and thus would necessarily have been involved in the decision to
order a murder. (Gov. Br. 90) Indeed, the Government admitted
in their summation that "the last informant to speak to Crea

spoke to him 20 years ago" (Tr. 4384-85), further establishing the paucity of the evidence against Crea.

27. Moreover, the testimony of the organized crime expert that the underboss of a family would necessarily be involved in the decision to issue an order to commit a murder, was undermined by other evidence disclosed post-trial, and even further undermined by evidence only disclosed to the defense during the briefing of this appeal (see Gov. Supp. Br. 30, n.4), as well as by testimony from another organized crime witness with direct knowledge of at least one order given directly from the boss to a soldier, without any involvement on the part of the underboss. (Tr. 1734 (witness Robert Spinelli describing purported order from then-Luchese family boss to soldier without the involvement of underboss Anthony Casso).) Under any circumstances, the evidence against Crea could not reasonably be called overwhelming, or anything close to it.

28. Additionally, the prosecutor spent three transcript pages of his main summation emphasizing Evangelista's account of having heard Londonio's statement, in addition to dozens of pages seeking to establish Evangelista's general credibility. And perhaps most importantly for harmlessness review, the jury sent a note during deliberations expressly asking "[w]e would also like to see and hear the transcript regarding Evangelista's testimony regarding Londonio's confession about the Meldish

15

murder, both cross and direct examination." (Tr. 4812)  This is as clear a sign as can be imagined that the jury considered this testimony to be important in its evaluation of the evidence regarding the Meldish homicide.  Indeed, as noted in Crea's reply brief, the Government itself argued at Evangelista's sentencing that his testimony regarding admissions he received from Londonio "was critical to convicting Madonna and Crea Sr. on the murder count." Government's Sentencing Submission, United States v. Evangelista, SDNY 17 Cr. 191 (RA), ECF # 41, at 5-6.

29.  In addition to this compelling issue, Crea raises several other issues that would require reversal.  A central issue that would require outright dismissal of the indictment is that the district court committed reversible error in failing to inspect the grand jury minutes and dismiss the indictment after multiple knowingly false and misleading statements were made to the grand jury, and in allowing the government to avoid this consequence by permitting prosecutors to use the grand jury improperly to issue subpoenas for the purpose of trial preparation, which resulted in prejudice to Crea at trial.

30.  This issue is particularly notable because the district court failed to rule on the defense motion to inspect and dismiss, and instead took the unusual step of allowing the prosecution simply to "re-indict" Crea, in violation of the

principle that a defendant may not be re-indicted without the court having determined whether the defective indictment must be dismissed with or without prejudice. See, e.g., United States v. Gambino, 59 F.3d 353, 363 (2d Cir. 1995) ("We recognize that the district court said that had it dismissed the indictment, it would have done so without prejudice," and "[g]iven dismissal without prejudice, the government would have been free to seek to have Gambino reindicted"); United States v. Stayton, 791 F.2d 17, 21 (2d Cir. 1986) (where dismissal required due to speedy trial violation, "we next must determine whether to dismiss the case with or without prejudice," and ultimately deciding to dismiss with prejudice in light of enormity of delay); United States v. Koerber, 281 F. Supp. 3d 1185, 1191 (D. Utah 2017) ("The prejudice determination is a necessary precursor to reindictment, so it is properly considered part of the indictment's dismissal, which starts the § 3288 clock")

31.  An additional basis for reversal is that the convictions of VICAR murder and VICAR murder conspiracy were necessarily premised on the Government's defective theory of conspiratorial liability under Pinkerton v. United States, 328 U.S. 640 (1946). The district court's instruction on Pinkerton liability was fatally flawed in that it allowed the jury to convict Crea, not on the basis of having been part of a conspiracy that included the murder of Meldish as a natural

17

consequence, but on the basis of having been a part of any charged conspiracy, ultimately including RICO conspiracy. But, in light of <u>Borden v. United States</u>, 593 U.S. 420 (2021), and other cases, <u>Pinkerton</u> liability is no longer a viable theory to prove VICAR intentional murder under New York Penal Law § 125.25, and intentional murder is not a "natural consequence" of RICO conspiracy, and thus the instruction was improper.

32. With respect to the RICO conspiracy count, reversal is warranted because the district court erroneously permitted the prosecution to introduce irrelevant and prejudicial propensity evidence against Crea, in violation of Federal Rules of Evidence 404(b) and 403, namely outright speculation that Crea had been responsible for harassing an employee of a contractor, and testimony regarding incidents in the distant past intended to suggest to the jury that Crea had a propensity to engage in organized crime activity, even though there was little to no evidence of such activity within the charged time period.

33. Finally, Crea has also adopted the numerous arguments of his co-defendants to the extent that they apply to him, and has appealed the district court's denial of the Appellants' joint Rule 33 motion, which relates to the late disclosure of Brady/Giglio material regarding Evangelista and John Penisi, another important prosecution witness, which undermined the

18

prosecution theory at trial, had significant impeachment value, and established that the witnesses committed perjury at trial.

34.   Oral argument date for the appeal has been set for May 8, 2024, approximately one-and-a-half months from the date of this motion, after the Court, by docket entry of December 14, 2023, had initially proposed argument for the week of March 1, 2024.   In light of the numerous issues raised in the various appeals, the size of the record, and the complexity of several of the issues raised, it is not unreasonable to anticipate that several months may pass from the date of oral argument for the Court to decide the appeal.   Although we are confident as to the merit of our arguments, it appears likely that, whatever the outcome, Mr. Crea will not live to see the final outcome of the case.   Because of these circumstances, and for the reasons discussed underline supra, we respectfully request that bail be set pending the determination of the appeal, so Mr. Crea can receive the needed medical care and otherwise tend to his numerous health needs and receive appropriate palliative care at this difficult time for himself and his family.

35.   By e-mail, Assistant United States Attorney Hagan Scotten advised that the Government opposes the motion for bail and intends to file a response.

WHEREFORE, the motion should be granted, and the Court should order that Mr. Crea be released from Bureau of Prisons custody and remain at liberty on bail pending appeal.

DATED: New York, New York
      March 28, 2024

                          _/s/_____

                          BRENDAN WHITE